IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| SILVA INTERNATIONAL, INC., | § | |
| a Texas corporation, and LAURA SILVA | § | |
| QUESADA, | § | |
| | § | 5:15-CV-77 |
| Plaintiffs, | § | CIVIL ACTION NO. _____ |
| | § | |
| v. | § | |
| | § | |
| MINDVALLEY LC, | § | JURY DEMANDED |
| a Nevada limited liability company, | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

**Introduction**

1.      This Complaint asserts causes of action by Silva International, Inc. against Mindvalley LC for breach of contract, trademark infringement, and federal unfair competition. Silva International is a Laredo-based corporation that distributes personal-growth materials and teaches personal-growth seminars throughout the world. Mindvalley is a global digital publisher of personal growth materials based in Malaysia.

2.      In addition, this Complaint asserts a separate breach-of-contract action by Laura Silva Quesada.

3.      In August 2007, Silva International and Mindvalley executed a Joint Venture Agreement (JVA) that granted a worldwide license in certain intellectual property rights to Mindvalley. In exchange for the license, Mindvalley promised to share revenue with Silva International at a rate of between 10% and 50%, depending on the product. Mindvalley also promised to share revenue with the authors of products at a rate of 10%.

4.    Plaintiffs allege that Mindvalley has failed to pay the proper royalties due under the JVA. In addition, Silva International alleges that Mindvalley has used Silva International trademarks outside the scope of the license and that, because of Mindvalley's failure to pay proper royalties, the JVA was terminated no later than March 12, 2015, such that any sales or advertising of materials branded with Silva International's trademarks constitute trademark infringement and unfair competition under § 32 and § 43 of the Lanham Act.

## The Parties

5.    Plaintiff Silva International, Inc. is a Texas corporation whose principal place of business is 112 Del Court, Suite A, Laredo, Texas 78041–2276. Silva International may be served through its attorneys of record, Gunn, Lee & Cave, P.C., 300 Convent, Suite 1080, San Antonio, Texas 78205.

6.    Plaintiff Laura Silva Quesada is an individual whose address is 322 Ridge Road, Laredo, Texas 78041–2347.

7.    Defendant Mindvalley LC is a Nevada limited liability company that may be served through its registered agent: Incorp Services, Inc., 2360 Corporate Circle, Ste. 400, Henderson, Nevada 89074-7739.

## Jurisdiction and Venue

8.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1332.

9.    In addition, this Court has subject matter jurisdiction over the claims that relate to the Lanham Act pursuant to 15 U.S.C. § 1121.

10.    This Court has supplemental jurisdiction over any state claims in this Original

Complaint that arise under Texas law pursuant to 28 U.S.C. § 1367(a).

11.     This Court has general personal jurisdiction over Mindvalley because Mindvalley has engaged in continuous and systematic contact with Texas by regularly travelling to the state for training and establishing business relationships.

12.     This Court has specific jurisdiction over Mindvalley with respect to Silva International's breach-of-contract claim because Mindvalley has purposefully availed itself of the privilege of conducting activities in Texas in connection with the Joint Venture Agreement, including, but not limited to, engaging in extensive communications with Silva International and visits to Texas during negotiations and performance of the JVA.

13.     Venue is proper in this district and division under 28 U.S.C. § 1391(b)(2) or, in the alternative, § 1391(b)(3).

## Statement of Facts

### Silva International

14.     Beginning in the 1960s, Laredo resident Jose Silva, Sr., through extensive research and study, discovered and defined certain philosophical and scientific concepts relating to the enhancement of mental capacity and sensitivity of the human mind.

15.     Throughout the course of his research and teachings, Mr. Silva formulated these concepts into an organized program of lectures and materials that became known as "the Silva Method."

16.     In 1970, Mr. Silva organized Silva International to teach these concepts and distribute material embodying these concepts throughout the world.

17.     Since its organization, Silva International has published and distributed materials

embodying the concepts throughout the world, and has become an internationally-renowned or-

ganization with independent contractors in the United States and other countries.

18.     Silva International distributes its goods and provides its services under various

registered and unregistered trademarks and service marks, including, but not limited to, THE

SILVA METHOD (U.S. Regis. No. 2970424), a federal incontestable registration for interna-

tional educational seminars for mind development and stress control), SILVA, SILVA LIFE

SYSTEM, SILVA MANIFESTING, SILVA INTUITION SYSTEM, SILVA MIND BODY

HEALING, and this design mark:



(collectively, "the Silva Marks"). A true and correct copy of Silva International's federal trade-

mark registration for THE SILVA METHOD is attached as Exhibit A.

19.     Mr. Silva was President of Silva International until his death in 2000.

*Development of Updated Materials*

20.     For three decades, Laura Silva Quesada, who is Mr. Silva's daughter, has been an

internationally-known lecturer and teacher of the Silva Method.

21.     In about 2007, Ms. Quesada became President of Silva International and began a

program to update and modernize the Silva Method materials, which were by that time almost 40

years old.

22.     Ms. Quesada was one of only a few people qualified to do so given her familiarity

and experience with her father's work.

23.     The results of this modernization effort were courses called Silva Intuition Training, Silva Mind Body Healing, Silva Life System, and Silva Manifesting.

24.     Silva International has always encouraged the creation of new material to help others practice the Silva Method. To incentive this, Silva International has had a long-standing policy to allow authors of new material used by Silva International 10% of the gross revenue attributable to the material.

25.     As a result of this modernization, Silva International's revenue significantly increased over prior years.

*The 2007 Joint Venture Agreement With Mindvalley*

26.     Mindvalley LC is a digital publisher headquartered in Kuala Lumpur, Malaysia that specializes in personal growth materials.

27.     In August 2007, Silva International signed a Joint Venture Agreement (JVA) with Mindvalley that granted a worldwide license to Mindvalley to use certain Silva International intellectual property, including its trademarks, throughout the world. A true and correct copy of the JVA is attached as Exhibit B.

28.     The JVA was signed on August 23, 2007.

29.     Vishen Lakhiani, a manager and principal of Mindvalley, personally executed the JVA while in Laredo. Another Mindvalley officer, Mike Reining, was also present in Laredo when the JVA was signed.

30.     In exchange for the license, Mindvalley was to pay between 10% and 50% of revenue received from sales of Licensed Products to Silva International. (Ex. B ¶ 1.2 (defining "Licensed Products").)

31.     In addition, Mindvalley agreed to pay 10% of the revenue received from sales of Licensed Products to Laura Quesada.

32.     Between August 23, 2007 and March 12, 2015, Mindvalley wired royalty payments to Plaintiffs' respective bank in Laredo and provided reports concerning sales and accrued royalties to Plaintiff's.

33.     Between August 23, 2007 and March 12, 2015, Mindvalley's website made Licensed Product available for purchase and download globally, within the United States, and within the state of Texas.

34.     Between August 23, 2007 and March 12, 2015, Mindvalley personnel made numerous trips to Laredo concerning the Joint Venture Agreement.

35.     On information and belief, since March 1, 2011, Mindvalley has received at least $11,201,217.21 in revenue from sales of Licensed Products.

36.     Between April 1, 2011 and December 31, 2014, Mindvalley has paid a total of $1,330,130.10 to Plaintiffs for royalties accruing since March 2011.

37.     Since at least as early as April 1, 2011, the Parties have applied a royalty rate of 15% of the royalty base payable to Silva International and 10% of the royalty base payable to Laura Quesada.

38.     On information and belief, Mindvalley has underpaid royalties to Plaintiffs by $1,470,174.20: $882,104.52 to Silva International and $588,069.68 to Mrs. Quesada.

39.     On March 2, 2015, Silva International sent Mindvalley a letter demanding that Mindvalley comply with its obligations under the JVA, including the payment of all past-due royalties. A true and correct copy of that letter is attached as Exhibit C.

40.     In an email dated March 8, 2015, Mr. Lakhiani denied any breach of the JVA. A

true and correct copy of that email is attached as Exhibit D.

41.     In a letter dated March 12, 2015, Silva International replied to Mr. Lakhiani's March 8 email and provided notice of termination of the JVA based on Mindvalley's failure to cure all of the breaches. A true and correct copy of Silva International's March 12 letter is attached as Exhibit E.

*Mindvalley's Unauthorized Use of Silva International's Trademarks*

42.     Mindvalley owns the domains, and maintains content at, the following domains: facebook.com/thesilvamethod, silvalifesystem.com, silvamindbodyhealing.com, silvaintuitionsystem.com, silvapeaks.com, and silvamanifesting.com. A true and correct copy of each of these is attached Exhibit F, G, H, I, J, and K, respectively.

43.     Each of these websites prominently display or use at least one of the Silva Marks.

44.     Beginning at least as early as 2012, Mindvalley began using the Silva Marks to promote the products and services of others not affiliated with Silva International.

45.     For example, on March 13, 2015, Mindvalley posted an advertisement for a program titled "Beyond Seeking With Ken Wilber," which is another digital publication available for purchase from Mindvalley. Mr. Wilber has no affiliation with Silva International, and Silva International received no proceeds from customers who ultimately purchased his products. A true and correct copy of the post is attached as Exhibit K.

46.     On May 30, 2013, Mindvalley sent an email from "The Silva Team" promoting "Christie Marie, a brilliant intuitive coach and healer," and directing recipients of the email to register for a 60 minute on-line presentation. Christie Marie has no affiliation with Silva International, and Silva International received no proceeds from customers who ultimately purchased

her products. A true and correct copy of this email is attached as Exhibit L.

47.     On November 16, 2014, Mindvalley sent an email from "The Silva Method" and "The Silva Method Team" promoting Lisa Nichols. Lisa Nichols has no affiliation with Silva International, and Silva International received no proceeds from customers who ultimately purchased her products. A true and correct copy of this email is attached as Exhibit M.

48.     In addition to promoting others' products, and despite Silva International's letter terminating the JVA and the license it granted, Mindvalley has offered for sale, sold, and continues to sell, goods bearing the Silva Marks after March 12, 2015.

## Count I—Breach of Contract

49.     Silva International repeats and re-alleges the allegations contained in each of the preceding paragraphs.

50.     The JVA is a valid and enforceable contract.

51.     Silva International is a proper party to sue for breach of the JVA.

52.     Silva International has performed, tendered performance of, or was excused from performing its contractual obligations under the JVA.

53.     Mindvalley's breach has caused Silva International injury in the amount of at least $882,000.

## Count II—Breach of Contract

54.     Laura Quesada repeats and re-alleges the allegations contained in each of the preceding paragraphs.

55.     The JVA is a valid and enforceable contract.

56.     Mrs. Quesada is a third-party, intended beneficiary of the JVA and therefore a

proper party to sue for breach of the JVA.

57.    Mrs. Quesada has performed, tendered performance of, or was excused from per-

forming all of her contractual obligations under the JVA.

58.    Mindvalley intended to give Mrs. Quesada the benefit of Mindvalley's promise of

performance under the JVA.

59.    Mindvalley's breach has caused Mrs. Quesada injury in the amount of at least

$558,000.

**Count III—Trademark Infringement of a Federally-Registered Mark**

60.    Silva International repeats and re-alleges the allegations contained in each of the

preceding paragraphs.

61.    The use by Mindvalley of THE SILVA METHOD is likely to cause confusion or

mistake or deception of purchasers as to the source or origin of its goods and services.

62.    Purchasers are likely to purchase Mindvalley's goods bearing THE SILVA

METHOD trademark believing that they are goods of Silva International, thereby resulting in

lost sales to Plaintiff.

63.    In addition, Mindvalley's use of THE SILVA METHOD is likely to cause confu-

sion, mistake, or deception as to the origin, sponsorship, or approval of goods, services, or com-

mercial activities by Mindvalley, including goods and services of other companies or individuals

promoted on Mindvalley's websites and through its email marketing.

64.    The infringement by Mindvalley has been willful and deliberate, and is designed

specifically to trade upon the enormous goodwill associated with THE SILVA METHOD.

65.    The goodwill of Silva International under its THE SILVA METHOD mark is of

enormous value, and Silva International will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

66.     Mindvalley's infringement will continue unless enjoined by the Court.

### Count IV—Federal Unfair Competition Under § 43 of the Lanham Act

67.     Silva International repeats and re-alleges the allegations contained in each of the preceding paragraphs.

68.     Mindvalley's use of the Silva Marks constitutes a false designation of origin under 15 U.S.C. § 1125(a) that is likely to cause confusion, mistake, or deception as to the origin, sponsorship by Silva International, or approval by Silva International of Mindvalley's goods, services, or commercial activities.

69.     The false designation of origin by Mindvalley has been willful and deliberate, and is designed specifically to trade upon the enormous goodwill associated with the Silva Marks.

70.     Mindvalley's false designation of origin will continue unless enjoined by the Court.

### Demand for a Jury Trial

71.     Plaintiffs demand a trial by jury.

### Prayer

Plaintiffs pray:

1.     For actual damages resulting from Mindvalley's breach of the 2007 Joint Venture Agreement in an amount of not less than in the amount of at least $882,104.52 and at least $558,069.68 for Silva International and Laura Silva Quesada, respectively.

2.     For their reasonable attorney's fees and costs under Tex. Civ. Prac. & Rem. Code

§ 38.001(8); and

3.       Pre- and post-judgment interest to the maximum extent allowed under the law.

Silva International prays:

4.       For actual damages resulting from Mindvalley's past and continued infringing use of the Silva Marks as provided for by the Lanham Act;

5.       For Mindvalley's profits resulting from Mindvalley's past and continued infringing use of the Silva Marks as provided for by the Lanham Act;

6.       Pre- and post-judgment interest to the maximum extent allowed under the law.

7.       That this Court award Silva International and Laura Silva Quesada such other relief as is warranted by the facts and the law and is proper and just under the circumstances.

Silva International prays:

8.       For a permanent injunction enjoining Mindvalley, its officers, directors, agents, servants, employees, attorneys, and any other persons in active concert or participation with them from using the Silva Marks and/or otherwise infringing Silva International's rights in the Silva Marks;

9.       That the Court order Mindvalley to immediately deliver up and destroy all goods, devices, literature, advertising and other material bearing a confusingly similar trademark or other designation likely to cause confusion with the Silva Marks; and

10.      That the Court find this case "exceptional" under the Lanham Act and Mindvalley be compelled to pay Silva International's attorney's fees relating to its claims under the Lanham Act, together with all costs of this suit, as well as exemplary damages to the fullest extent allowed under the law.

Dated: April 17, 2015

Respectfully submitted,

GUNN, LEE & CAVE, P.C.
300 Convent, Suite 1080
San Antonio, Texas 78205
T: (210) 886-9500
F: (210) 886-9883

/s/ mpaul
Michael D. Paul
mpaul@gunn-lee.com
State Bar No. 24051171
S.D. No. 731700

ATTORNEYS FOR SILVA INTERNA-
TIONAL, INC. & LAURA SILVA
QUESADA